# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | Bankruptcy Case No. 10-67281-fra11 |
| CLINTON SCOTT TUCKER and DELYNN G. TUCKER, | |
| Debtors. | MEMORANDUM OPINION |

## INTRODUCTION

The Debtors-in-Possession ask the Court to confirm their third amended plan of reorganization (Docket #193). A hearing on confirmation was convened on August 23, 2012. At the conclusion of the hearing, the Court took the matter under submission, and asked the parties to submit post-hearing memoranda on the application of Code § 1129(b) in light of recent developments in Ninth Circuit case law. After reviewing the testimony and evidence of the parties, and their legal memoranda, the Court concludes that the Debtors' third amended plan satisfies the legal requirements set out in § 1129, and that the plan should be confirmed.

## I. PROCEDURAL HISTORY

The Debtors are sole proprietors of a tanning salon business. In addition, Mr. Tucker is employed full-time by an unrelated company. Debtors filed their petition for relief on December 13, 2010. Their first plan was submitted on May 31, 2011 (#103). A first amended plan was filed on August 23, 2011 (#133). The first amended plan provided for payment of secured creditors, and payment of a dividend of

Page 1 - MEMORANDUM OPINION

approximately 16% to unsecured creditors. The Debtors would retain all of their real and personal property, including assets employed in the tanning salon business.

After the plan and disclosure statement were circulated, 57% of the holders of unsecured claims, constituting 61% of the dollar amount, accepted the plan; this vote was insufficient to constitute acceptance by the class. See Code § 1126(c). In addition, MBM Group, LLC, an unsecured creditor, objected to confirmation, on the grounds that the Debtors had failed to satisfy the so-called "absolute priority rule" set out in Code § 1129(b)(2)(B)(ii). The absolute priority rule provided, in essence, that a plan cannot be confirmed over the objection of a dissenting class if the debtor-in-possession retains assets. In a memorandum opinion, the court held that the absolute priority rule was applicable in cases where the debtors were individuals, and denied confirmation. See Docket #150, published as In re Tucker, 2011 WL 5926757.

The Debtors-in-Possession filed their second amended plan on December 12, 2011 (#152). This plan was substantially different, and designed to comply with the absolute priority rule. The plan provided for 10 years of payments to unsecured creditors, and a sale of the Debtors' tanning business "in an amount not less than what is necessary to pay off any remaining pre-petition creditors." At the conclusion of the hearing on confirmation of the second amended plan, the Court indicated that it would, if certain changes were made, enter an order confirming the second amended plan.[1]

Counsel for the Debtors-in-Possession were instructed to submit a form of order confirming the second amended plan. Before an order was presented, the Bankruptcy Appellate Panel for the Ninth Circuit issued its opinion in In re Friedman, 466 B.R. 471 (9th Cir. BAP 2012). As will be discussed below, a majority of the Friedman panel held that the absolute priority rule was not applicable in Chapter 11 cases filed by individuals, contrary to this Court's prior holding in this case. The Debtors-in-Possession asked the Court to "reinstate" the first amended plan, and confirm it on the theory that the Court's sole rationale for denying confirmation had been rejected by Friedman. The Court declined the invitation, reasoning that,

---

[1] Among other things, the Court required that a third party, whose participation was essential to the plan, consent in writing to be liable to interested parties to the extent of his promised contribution.

Page 2 - MEMORANDUM OPINION

while it has previously held that Bankruptcy judges are bound by decisions of the BAP, the Court and the parties had tried the first confirmation hearing on the assumption that the absolute priority rule controlled the outcome. If the rule in fact had been abrogated, it was necessary to try the matter anew. The order denying confirmation of the first amended plan was vacated, and a new confirmation hearing was ordered. Prior to the hearing, Debtors filed their third amended plan (#193). The third amended plan was essentially the same as the first, except that it added provisions providing for distribution of cash reserves at the conclusion of the plan to unsecured creditors. As the plan stated, the section "is being included to ensure that the unsecured creditors of the debtors obtain the financial benefit of any increased profitability of the business during the life of the plan." The third amended plan estimated an 18.24% dividend to holders of unsecured claims.

MBM Group, LLC renewed its objection to confirmation, asserting that the Court was not bound by, and should not follow, the BAP's Friedman decision. In addition, MBM argued that the third amended plan could not be considered to have been filed in good faith given the Debtors' demonstrated ability to confirm a plan providing for payment in full of unsecured claims.

## II. ANALYSIS

### A. Developments Regarding Confirmation and Absolute Priority

Debtors' first amended plan was rejected because it did not satisfy the requirements of Code § 1129(b)(2), the so-called absolute priority rule. The Court found that the Debtors' second amended plan did comply with that provision. However, as noted, before an order confirming the second amended plan could be entered, the Bankruptcy Appellate Panel held that the absolute priority rule does not apply in individual debtor Chapter 11 cases. In re Friedman, 466 B.R. 471 (9th Cir. BAP 2012). Noting its prior adherence to BAP decisions, the Court required that confirmation of the first amended plan be retried in light of Friedman. At the subsequent confirmation hearing, the dissenting creditor argued that BAP decisions are not binding on individual bankruptcy courts, and that the absolute priority rule be applied as it was after the original hearing, Friedman notwithstanding. The Debtors urge an uncritical acceptance of the Friedman decision. The appropriate approach lies somewhere in between.

// // //

1. *Binding Effect of BAP Decisions*

The Bankruptcy Appellate Panel itself has held that decisions of the Panel are binding on each of the bankruptcy courts in the districts comprising the Ninth Circuit. In re Windmill Farms, 70 B.R. 618, 622 (9th Cir. BAP 1987); In re Proudfoot, 144 B.R. 876, 878 (9th Cir. BAP 1992); In re Gurr, 194 B.R. 474 (Bankr. D. Az. 1996). The rationale for these holdings is that Congress's purpose in establishing the BAP was to provide a uniform and consistent body of bankruptcy law throughout the circuit. In re Tong Seng Vue, 364 B.R. 767, 771 (Bankr. D.Or. 2007). In Tong Seng Vue, the undersigned expanded on this rationale, holding that

> The Doctrine of *Stare Decisis* advances two important principles: the uniformity of case law throughout a jurisdiction, and the resulting predictability of results required in order to ensure fairness of the judicial process to litigants. As a matter of fundamental fairness to parties before it, a trial court must strive to apply the law as it is held by courts which may review its decisions. Otherwise, parties will often be forced to the trouble and expense of an appeal to achieve a lawful result whenever the trial court disagrees with the higher court's view of the law....

In short, this court will follow the BAP's decision respecting the absolute priority rule in individual cases, as discussed blow.

2. *Absolute Priority and In re Friedman*

In order to confirm a plan of reorganization, the proponent must demonstrate that the plan satisfies each of 16 provisions in 11 U.S.C. § 1129(a). Subsection (8) requires that each class of claims or interests either accept the plan, or is not impaired by the plan. Section 1129(b), commonly referred to as the "cram down" provision, provides an alternative to satisfying subsection (a)(8):

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements: ....(B) With respect to a class of unsecured claims –

// // //

Page 4 - MEMORANDUM OPINION

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirement of subsection (a)(14) of this section.

The last provision – that the holder of a claim or interest junior to that of a dissenting class will not receive or retain property, is the so-called absolute priority rule. The language permitting individual debtors to retain "property included in the estate under section 1115" is an exception added by the Congress in 2005.

Application of the absolute priority rule in individual cases has been the subject of considerable debate since the 2005 amendment. The debate turns on whether the phrase "retain property included in the estate under section 1115" means only the property obtained by the debtor post-petition, or includes virtually all of the debtor-in-possession's assets.[2] Courts interpreting §§ 1129(b)(2)(B) and 1115 as restricting the property a debtor may retain over the objection of an impaired unsecured class to post-petition acquisitions are said to have taken the "narrow" view. See In re Tucker, 2011 WL 5926757 (Bankr. D.Or. 2011); In re Karlovich, 456 B.R. 677 (Bankr. S.D. Cal. 2010); In re Kamell, 451 B.R. 505 (Bankr. C.D. Cal. 2011); (In re Gbadebo, 431 B.R. 222 (Bankr. N.D. Col. 2010); In re Maharaj, 681 F.3d 558, 571 (4th Cir. 2012). Other courts take the so-called "broad" view, holding that the sections, construed together, permit a debtor-in-possession to retain virtually all of its assets. See In re Friedman, 466 B.R. 471 (9th Cir. BAP 2012); In re Tegeder, 369 B.R. 477 (Bankr. D.Neb. 2007); In re Roedemeier, 374 B.R. 264 (Bankr. D.Kan. 2007); In re Shat, 424 B.R. 854 (Bankr. D.Nev. 2010).

---

[2] Code § 1115(a) provides in relevant part:
(a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541 –

(A) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first....

Page 5 - MEMORANDUM OPINION

The practical distinction between these approaches is stark: under the narrow approach, it is difficult, if not impossible, for an individual debtor to confirm a plan over the objection of an impaired unsecured class if the plan provides for the retention of any assets owned pre-petition. The individual debtor must either persuade every unsecured class to accept the plan, pay every class in full (or a combination of the two), "buy" assets it intends to retain by making a contribution of new value to the estate (*see* In re Bonner Mall Partnership, 2 F.3d 899, 908-09 (9th Cir. 1993)), or forego retention of any pre-petition assets. Courts adhering to the broad view permit the debtor-in-possession to retain pre-petition assets, effectively holding that Congress has abrogated the absolute priority rule for individual debtors.

Friedman follows the broad rule, holding that "a plain reading of §§ 1129(b)(2)(B)(ii) and 1115 together mandate that the absolute priority rule is not applicable in individual chapter 11 debtor cases." In re Friedman, 466 B.R. at 482. The panel resolves the narrow versus broad dispute by holding that

> Section 1115's identification of estate property consists of the property contained in § 541 *and the two post-petition acquired assets – newly acquired property and income. The so-called disputes over what "included" means in § 1129(b)(2)(B)(ii) and "in addition to" in § 1115 arise from misinterpretation of the words. Included is not a word of limitation. To limit the scope of estate property in §§ 1129 and 1115 would require the statute to read "included, except for property set out in § 541" (in the case of § 1129(b)(2)(B)(ii)), and, "in addition to, but not inclusive of the property described in § 541" (in the case of § 1115).

Id. Thus, a debtor may confirm a plan of reorganization that provides for retention of assets of the estate (defined by § 541) and assets thereafter acquired, notwithstanding the objection of an impaired senior class of unsecured creditors or interest holders.

3. *Application of the Friedman Rule*

As noted, a plan may be confirmed over the dissent of an impaired class if it provides fair and equitable treatment to the class. The majority opinion in Friedman somewhat exuberantly states that

> Simply put, a plan not paying an unsecured creditor in full is nevertheless "fair and equitable" (and can be crammed down over the unsecured creditors' objections), *so long as an individual debtor does not retain property except property included in the bankruptcy estate under § 1115.*

Friedman at 480 [italics in original]. This misstates the law. The statute provides that "the condition that a plan be fair and equitable with respect to a class *includes* the following requirements." Code § 1129(b)(2)

Page 6 - MEMORANDUM OPINION

[emphasis added]. The Code does not define what is fair and equitable, but provides a minimum requirement that a fair and equitable plan not provide for retention of assets if senior classes are unsatisfied. Elimination of the absolute priority rule in individual chapter 11 cases removes a significant barrier, but does not relieve the plan proponent from its burden of proving fair and equitable treatment of dissenting classes. Friedman's assertion to the contrary was not essential to the holding that the absolute priority rule was not applicable in individual cases, and was dictum, and not binding. See, e.g., In re Gurr, 194 B.R. 474 (Bankr. D.Az. 1996).

### B. Fair and Equitable Treatment

With the elimination of the absolute priority rule set out in § 1129(b)(2)(B)(ii) in individual chapter 11 cases, the Court must analyze whether the plan is "fair and equitable" with respect to the class of unsecured creditors which has withheld its acceptance. Given the widespread application of the absolute priority rule, there is a paucity of case law providing criteria for a "fair and equitable" analysis, apart from the retention of assets. One case that does provide extensive discussion of this issue is In re Dollar Associates, 172 B.R. 945 (Bankr. N.D. Ca. 1994). The court in Dollar Associates observed that

> The absolute priority rule is only a minimum requirement for confirmation. Compliance with that rule via the new value exception does not guarantee that a plan is confirmable. Section 1129(b)(2) states: '*the condition that a plan be fair and equitable* with respect to a class *includes the following requirements*.' Thus the Code plainly provides that a plan may not be fair and equitable, even though it satisfies the absolute priority rule or the new value exception to the absolute priority rule.

Id. at 949 [emphasis added]. The same reasoning applies here: where the absolute priority rule is not to be applied, the proponent must nevertheless demonstrate that the plan satisfies the fair and equitable requirements of Code § 1129(b)(2). Dollar Associates sets out a number of criteria to be considered in determining whether the fair and equitable standard is satisfied, including:

– Whether the plan furthers the reorganization goal of preserving equity of the debtor;

– Whether the plan preserves jobs and going concern value;

– Whether the plan significantly furthers the goal of maximizing distribution to creditors; and

– Whether the plan has been rejected by the overwhelming majority of claims.

// // //

Page 7 - MEMORANDUM OPINION

In addition, three other criteria (at least) should be considered with respect to an individual debtor's plan:

– Whether the plan provides for equal treatment of the creditors in the dissenting class;

– Whether the net value of the assets retained is small relative to the amount to be paid out to unsecured creditors over the life of the plan; and

– Whether the assets retained are used to generate funds to be paid to creditors under the plan.

C. <u>The Debtor's Plan Does Provide Fair and Equitable Treatment</u>

Applying the foregoing considerations (which, it should be said, are neither exclusive nor exhaustive), the Court finds that the proposed plan is fair and equitable in its treatment of the Debtors' unsecured creditors. The plan preserves equity of the estate, and specifically the Debtor's business assets. It commits the Debtors' personal income and the revenues generated by the business assets to the payment of unsecured claims for a period of five years. The distribution provided is clearly superior to the treatment unsecured creditors would receive in the event of a liquidation. It is true, as the dissenting creditor points out, that the dividend under this plan is considerably less than the payout proposed by the second amended plan. However, that plan was proposed under duress: namely the application of the absolute priority rule, which the Bankruptcy Appellate Panel has now deemed to be inapplicable. The fairness of a plan should not be measured against a standard which was erroneously applied.

III. CONCLUSION

The proposed plan of reorganization satisfies all of the criteria set out in Code § 1129(a), other than § 1129(a)(8). Class 6, the unsecured creditors, has failed to accept the plan by a narrow margin. Notwithstanding the failure of the unsecured creditors to accept the plan, the plan may be approved under § 1129(b)(1), since the Court finds that the plan's treatment of the unsecured creditors is in fact fair and equitable.

// // //

// // //

// // //

The foregoing memorandum constitutes the Court's findings of fact and conclusions of law. Counsel for the Debtor-in-Possession shall submit to the Court a form of order consistent with this ruling.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

Page 9 - MEMORANDUM OPINION